The first case this morning is People v. Howe for the appellate Mr. Davis and for the appellate Mr. Majors. You may proceed. Thank you, Your Honor. May it please the Court, Counsel. Your Honors, good morning. Your Honors, this appeal is brought on two primary issues. What's commonly referred to as an alleged Brady violation and then a question of whether or not the State proved beyond a reasonable doubt that Mr. Howe is a sexually dangerous person. I would like to discuss at first the Brady issue. As this Court is aware, Brady v. Maryland, which has been law for approximately 50 years now, requires the State, requires the Government, to provide exculpatory or impeaching evidence to a criminal defendant. It must be favorable to the defendant, it must be willfully or inadvertently suppressed by the State, and the accused must be prejudiced because the evidence is material to either guilt or punishment. In this case, this is obviously a Sexually Dangerous Persons Act case that stems from an underlying criminal offense. In this case, there are two alleged sexual assaults against the same individual, Mr. Howe's, at that point, estranged wife, Ms. Howe. I'll refer to her as Ms. Howe. I know she's referenced in the record as Howe Riffey or Riffey Howe, but I'll refer to her as Ms. Howe throughout this argument. The initial underlying criminal offense, criminal felony case that this case was filed under, occurred on December 11th of 2011. During the investigation of that, it was discussed an offense that occurred on April 4th of 2011. The police were called out to their marital home, the police arrived, took statements, and specifically a written statement on April 4th, 2011. They were both subsequently charged, the evidence, the record shows, with domestic battery. Those counts were later dismissed by the Scott County State's Attorney's Office. Subsequently, the December sexual assault incident occurred. Mr. Howe was charged. He was subsequently charged with criminal sexual assault. And in June, specifically on June 17th, 2012, shortly before the filing of those sexual assault charges for the December offense, another written statement was made by Ms. Howe. It's unclear from the record whether it's the State's Attorney's Office or the local sheriff or police department. After the filing of the sexual dangerous person's petition, the only one of those two statements, and I will note, the statements are very different. The April 4th, 2011 statement makes no reference to any sex assault, makes no reference to any sort of sexual penetration, either by his penis or digitally. It makes no reference whatsoever. The June 17th, 2012 statement discusses that very fully. It discusses him digitally penetrating her, describes him placing his penis in her vagina. And lo and behold, when it came to the point of submitting documents to experts, which is how these SDP cases work, and SVP, sexually violent persons cases, work as well. It was the June 17th, 2012 statement that was provided to the experts. It was the June 17th, 2012 statement that was provided to the defense. And it wasn't until approximately the third day of trial that the April 4th, 2011 statement that made no reference whatsoever to any sex assault occurring is provided to the defense. By that point, one of the state's expert witnesses had already testified. One of the defense expert witnesses had testified. And it's unclear from the record, it appears that that statement was provided possibly right before the second state expert testified. Ms. Howe, the author of these statements, had already testified. She was subsequently allowed to be, the defense was allowed to recall her. The issue is, this is a very different statement. The April 4th, 2011 statement, as I said, contains no reference to sexual assault, no reference to penetration, absolutely nothing. I know the first issue, and the state very fully briefed this and discussed this in theirs, is whether or not Brady should even apply to sexually dangerous persons cases. I would note for the court, and I noted this in my reply brief, at no point at the trial court level did anybody have a question that Brady would apply to these sorts of cases. There was no argument from the state. I'm not saying that as an argument of waiver, but I'm saying that nobody even considered that as a possibility. I think it's very important, this court and the Supreme Court have extended and ensured that those individuals subject to possible lifetime commitment have what are termed criminal rights, right to counsel, right to a jury. The state must prove them sexually dangerous or sexually violent beyond a reasonable doubt. I think this also is one of those due process rights, the Brady, violate Brady rights, is another one of these due process rights that must be extended to sexually dangerous and sexually violent cases. The state argued in their brief the feasibility of applying Brady. Normal criminal case involves one incident. Sexually dangerous cases can involve a number of incidents over a number of years, and that is accurate. However, that's belied by the fact that the state provided information from six counties in Illinois other than Scott and from St. Lucie County down in Florida. They provided over 600 pages of documents, photographs of one of his, Mr. Howe's former paramours, photographs from a separate county. The state has access to a myriad of abilities to obtain criminal information. There's the Illinois State Police LEADS system, there's the FBI NCIC system. This is not something that is foreign and unable for a state's attorney's office or the appellate prosecutor's office, when they are called in, to determine. It should be noted, I'll get to that actually in a moment. Your Honor, the questions, as I said, the three main issues for Brady are whether it's favorable to defendant because it is exculpatory or impeaching. Clearly, it's an impeaching statement. It has no reference to sex assault, no reference whatsoever. There are a number of other things, there are differences between these two statements. Whether she came into the home, whether she was in the bedroom, whether he had been smoking marijuana, whether he had been drinking. And obviously, as I said, and I'll say it again, no reference whatsoever to a sex assault. And this is very important. And it's very important because even at the December 11th, 2011 incident, the instant incident for this case, when the deputy arrives, who was the same deputy, Ms. Howe stated, oh, we just had a little scuffle, it's no problem. And it wasn't until approximately a half hour to an hour later that she is a passive in hospital over in Jacksonville that she then later discloses. So it does raise questions about her disclosure, her ability to provide information to the police, and obviously in this, providing allegations of a sex assault a year and three months later, a year and two months later. The other issue, it only needs to be willfully or inadvertently suppressed by the state. It was at least inadvertently. The record is clear on that. The appellate prosecutor's office was the primary attorney prosecuting this case. When this issue came up, she told the court that she herself was not aware of the statement until that day. However, that statement, the April statement, was in the Scott County State's Attorney's Office, which was described as downstairs. It was in the same building, it was in that office. And it's worthy to note because every single day of trial, the Scott County State's Attorney was sitting right at counsel table. He was there, he was present, the file was in his office. The Scott County State's Attorney signed all pretrial disclosures. During the, prior to the filing of the sexually dangerous person's petition, the Scott County State's Attorney filed a 115-7.3 motion to use other sex offenses. Again, this is prior to the SDP petition. And he listed and described it as it was written in the June 2012 statement, not the April 4 statement. And there's an interesting quote at the end of that discussion in describing the offense. He states, reports provided to defense counsel. Well, the State's Attorney chose which reports to provide at that time, and it was not the April 4, 2011 statement. That is unequivocal. The next question is whether Mr. Howe was prejudiced because the evidence is material to guilt or punishment. Material evidence, or evidence is material if there is a reasonable probability that the results of the proceeding would have been different had the evidence been properly disclosed. Ronners, this was disclosed on the third day of trial. The trial court did try to make some curative effects by allowing the defense to recall Ms. Howe. However, I would argue that was not a meaningful cross-examination. He had had that statement for at most a couple of hours while doing, while an expert was testifying, while a deputy was testifying. So he is trying to prepare for cross-examination while he is doing cross-examinations of other witnesses on a statement he had received only hours before. So any cross-examination or any examination of Ms. Howe was not, he did not have adequate time to prepare for that cross-examination. It is also helpful in these cases... Well, if he had had more time, what additional evidence was he going to establish in cross-examination that he didn't otherwise? Well, Your Honor, in this, he wouldn't have had meaningful time because he is working on cross-examining an expert. I know he went through the statement with Ms. Howe, and I think probably more importantly, especially in these sexually dangerous persons cases, are what the experts have. And in this case, the experts did not have the statement. They could not weigh Ms. Howe's credibility through her statements. One of them is still there. One of them is still there, and the other one, there was no effort to recall. And I understand that, and that's clear from the record that they did not recall either of the experts. Or ask for a brief continuance to prepare a more effective examination. Or to ask either of the experts, would this make anything? You've got this contradictory or impeaching report. Or statement, would that make any difference? And, Your Honor, I think it would depend upon whether the experts were able to review these materials. Review it in the totality of materials. Well, I think one of the difficulties is, and I think one of the experts described it as he would have to calculate, I think was his phrase, or recalculate using that statement. I mean, these experts had over 600 pages of materials to review. And to just toss a report to an expert, I don't think would be a meaningful ability for them to review that. Well, if their testimony means anything at all, then they seem to have some degree of mastery of the 600 pages they have reviewed. They seem to be able to testify as to their memory of those things that went into their calculations. How does it... One would assume that when an expert testifies, that expert has not forgotten either the process or the analysis of that which they are testifying about. So you ask them to review, I don't know how many pages of the report? Another couple of pages? The written statement is approximately a two-page statement. And I would agree that it is very important to be able to make sure that these experts can review this material properly. I would note, it's interesting you bring that up, because Dr. Killian, one of the experts, in talking about the reporting of the April 2011 offense, states in testimony, she then also said, while she was discussing that, meaning the December incident, that he had raped her about eight months previous to that. He makes a couple of other statements similar to that. Essentially, what I'm getting at is, for some reason, Dr. Killian believed that in December of 2011, she made these accusations, when that is not in the record whatsoever. Nobody else believes that. So in some respects, that goes to his ability to remember and process these materials. And that's a danger, because if he thinks that she made this statement in December 2011, nobody else believes that, nobody else thinks that. The only instance of her making an allegation of sex assault in April 2011 is in June. Not in December. For some reason, he thinks it's December. I don't know why. December after those two, or December before those two? December of 2011, before the June. Essentially, I think he's backdating. Why isn't it a different event? Is it clear from the record that she was describing another event? And if that's the case, why do you have the opportunity to cross-examine on that? I think the sense I get from the record is, in review of his notes, he thought she made the April reporting, a report of an April sexual assault in December, when she actually made that report seven months later in June. So that even goes against his ability to remember and be able to process that. Well, didn't he say that he starts off with a proposition that doesn't necessarily lead to what the reports or the witnesses have said? They do. And I believe both experts make that statement. I think it's very important, though, if you start at that, but then you see completely contradictory information, well, where does the balance go then? And I would argue that it's reasonably probable that in reviewing that, they would say, well, there's actually a question as to this April offense. There actually is a question as to whether this actually occurred, whether or not he committed any offense against her. She had a complete opportunity to make this statement, to tell this police officer at, let me see, the April 4th statement is 1240 AM. Mr. Howe was not in the house. She alleged in the April 4th statement that he had threatened to kill her, pulled a knife on her, she had to use the knife to stab him, all these things, yet she didn't go far enough to say, oh, and by the way, he did this. There's a similar allegation that she did not immediately disclose in the December offense, which goes to the credibility of her making that as well. It's true that victims of sex crimes sometimes don't disclose their sexual activity until much later. In fact, they kind of try to stay away from that in their initial statements. I wouldn't know the experts considered that. I believe they would have, but I think it's important that they see all these discrepancies, and they had no opportunity to see this major discrepancy, this major issue, which is not disclosing this for a year and three months, a year and two months. It's unclear why Dr. Jekyll wasn't questioned about the document. It's unclear from the record, and obviously we can't call in the trial counsel and have him come in and testify to this. As I see it, it's unclear from the record when trial counsel received it. He definitely received it that morning. It's unclear whether it was before the 9 o'clock call or somebody was Xeroxing, as they describe, during the testimony. It appears that he did have it, but if he had it, he had it maybe five minutes before Dr. Jekyll testified. And he even makes a statement that he didn't... Your Honor, I have here a report that has just been given me, and my cursory examination of this report is that it is contradictory to a later statement, or it contradicts or is impeaching of a later statement given by one of the victims. Yes, Your Honor. I'd like to review this for three minutes so that I can ask the psychiatrist about it, whether he saw it, whether it would have made a difference if he'd seen it, what his testimony would be. Do you think the trial judge would have said, well, we can't do that. What do you mean, you just got this and, oh, jeez. You're asking for three minutes, five-minute recess, 15-minute recess? I don't think the trial judge would have allowed that. It's clear from the record that he was exasperated at the fact that it wasn't disclosed, if you want to look through the record on that. The issue is, even Dr. Jekyll, who was there, and he's the one that said he would have to recalculate. I would hope that as a professional, as an expert, he would want to sit down and review the entire situation, not just sit down five seconds before he testifies and look at a statement. With that, Your Honors, the red light is on, and I will sit down. Thank you, Your Honor. May it please the Court, the counsel. I think Mr. Coonrod, trial counsel, and Mr. Davis have done everything you could possibly do for Mr. Howe. Counsel is focused on the Brady issue, and I'll do the same subject to the court's approval. Initially, I think we both agree that there's no Illinois case that says Brady applies to sexually dangerous persons' cases. They rely primarily on this federal supplement opinion, Edwards, which in the exact language of the Edwards court in applying the Brady rule to a federal case, the Adams-Walsh Act, which is vaguely similar to our Sexually Dangerous Persons Act, said that in these extreme circumstances, I don't think there's anything extreme about people versus Howe. In the Edwards case, I think they allowed to detain Mr. Edwards for six months when the expert's reports had contradicted herself. So he was detained for six months for no reason, and the state dismissed the case. There's nothing extreme about people versus Howe. Putting the aside about whether Brady applies, we have the Civil Practice Act, we have the Supreme Court rules, there's plenty of sanctions, there's plenty of ways to get information. But putting that aside, if Brady does apply, I don't think this is the right case to argue that, but if it does apply, at one point when it was disclosed that this report, which is I think about two lines, a page and a third, hadn't been received, they got it out of the basement, they gave it to counsel, and Judge Schmidt, who's been around a long time as a trial lawyer, private practitioner, prosecutor, now judge, said, I'm going to give you wide latitude. I took that to mean, ask me for what you want. Well, he didn't. Mr. Kuhnrund didn't. He just was allowed to call Riffey Howe, or Howe Riffey, however you want to pronounce that. But I think he could have went further, but he didn't. Whose fault is that? That's Mr. Kuhnrund's fault. They say, well, sure. We had this page and a third report before Dr. Jekyll testified, and I asked to cite the Antoine case because a reasonable inference from the Antoine case is one expert is enough. You don't need two. So they had this report prior to Dr. Jekyll, and here they argue, well, we didn't have time. We didn't have time to show this page and a third to Dr. Jekyll, but in the reply brief, they say that Mr. Kuhnrund just didn't think about it. Well, I'm on page 10, 9 and 10. While it's clear from the record that trial counsel, while you had the statement at the time, Dr. Jekyll testified the possibility of using it in questioning Dr. Jekyll, which has got to be a typo. It should read Kuhnrund. This had not come to mind. Now they're arguing something different. They haven't argued ineffective assistance of counsel. As I read the cases, Mr. Howe can still do that on a 1401 petition. Another thing is that Mr. Kuhnrund represented Mr. Howe in the criminal case that arose, two criminal cases actually, one against Ms. Howe and one against Mr. Howe in April. Both those cases were dismissed. That's at record volume 1, 21, I'm sorry, page 28. So presumably, Mr. Kuhnrund knew about the April 4 incident, presumably he had the report, so therefore he would know that she didn't mention the sexual parts in that April incident. And he was allowed to bring in Mrs. Howe and, as Judge Schmidt said, wrung her out like a washcloth. No effort was spared in trying to impeach her. Lastly, if they had the report prior to Jekyll and they're allowed to bring in Ms. Howe and treat her as a hostile witness, that's not in the record, but that's basically what he did, and the judge said you've got wide latitude, and the judge here went to great lengths to say who he believed and who he didn't believe. He was the trier of fact. He was in the position to add all this up and come up with the right decision, and he said that he thought all the state's witnesses were extremely credible and the defendant wasn't. So where is the prejudice? Where is the materiality? The Beeman case says that this missing evidence, the so-called Brady evidence, must put the whole case in such a different light as to undermine the confidence of the verdict. It doesn't exist here. It's just not here when you have the trial judge telling this court, putting in the record every decision he's made and why he made it. I'll try to answer the court's questions. Your Honor, the state referenced extreme circumstances and said there were no extreme circumstances in this situation. I believe it's an extreme circumstance when this impeaching document is within the office of the state's attorney's office, in the building,  in the office of the person sitting at the table, the individual who I believe the record showed dismissed that case previously. He clearly had this document. There is no question about that, that that was in the state's attorney's office. And it's interesting to note, I discussed before about them providing documentation from six other counties. It's interesting to note that the only information from Scott County provided to the experts, provided in discovery, were reports regarding the December 2011, the incident offense, the June 2012 statement regarding sexual assault in April of 2011. And that's it. Meanwhile, Dr. Killian references in his report another of incidences between the Howes, between April of 2011 and December of 2011, where it's not clear 100% whether police were called, either the Scott County Sheriff's Office or local police department, including a December 17, 2011 incident, where even Dr. Killian describes he was charged with another count of domestic battery. It's not clear from the record whether Dr. Killian, Dr. Jekyll, Dr. Witherspoon, or even the defense were provided with anything referencing a December 17, 2011 incident other than that. There are no descriptions as the court can see and has seen before with SDP and SVP cases. These reports have very detailed paragraphs describing, essentially summarizing police reports and prior incidences. The only incident, or the only source of the information of incidents in Scott County are December 11 police reports and the June 2012 statement. There is no... What about the April statement? The April 2011 statement, the one that was made that night, the night of that alleged offense, was not provided until the third day of trial to anybody. Well, to defense counsel on the third day. Well, what about the fact that he did represent? Let's assume for the moment that that's the case, that he was counsel for that event, or for that charge, even though those charges were dismissed. Would that be actual notice of the police report? Probably, without fully revealing case law on the issue, probably, I'll admit. It would also be the opposite if they dumped the case before discovery was even provided. Precisely, because that's also another question. And I will say, I know the record shows, at least on the case that the petition was filed, the petition was the time frame of counsel, if you will. Prior to the petition filing, it was Mr. Hankins who represented Mr. Howe. After the petition was filed, Mr. Coonrod was appointed, so he only got information that Mr. Hankins had. I am not aware if Mr. Hankins or Mr. Coonrod represented Mr. Howe in that original April case. And the record is not clear on that, that I can recall. Ultimately, Your Honors, this is information that should have been disclosed. It wasn't disclosed until very, very late in trial. I know the court had a question about can't the doctors be recalled? Can't other things occur? Unfortunately, as the record shows, and And even in this instance, Dr. Witherspoon, the defense expert, testified out of order, so to speak, because of timing, because of scheduling. And that happens in courthouses throughout the state and throughout the country all the time. In conclusion, I would ask that this court find that Brady does apply, that in this case Brady was violated, that Mr. Howe's due process rights were violated, and reverse and remand back to the trial court on that issue.